1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10    CONNIE MAGIC-HALL,              )        NO. CV 05-5417-CT
                                      )
11                   Plaintiff,       )        OPINION AND ORDER
                                      )
12              v.                    )
                                      )
13    JO ANNE B. BARNHART,            )
      COMMISSIONER, SOCIAL SECURITY   )
14    ADMINISTRATION,                 )
                                      )
15                   Defendant.       )
                                      )
16    _____)

17        For the reasons set forth below, it is ordered that judgment be

18    entered in favor of defendant Commissioner of Social Security ("the

19    Commissioner") because the Commissioner's decision is supported by

20    substantial evidence and is free from material legal error.

21                          **SUMMARY OF PROCEEDINGS**

22        On July 28, 2005, plaintiff, Connie Magic-Hall ("plaintiff"), filed

23    a complaint seeking judicial review of the denial of benefits by the

24    Commissioner pursuant to the Social Security Act ("the Act").  On August

25    9, 2005, the parties filed a consent to proceed before the magistrate

26    judge.  On November 2, 2005, plaintiff filed a memorandum in support of

27    the complaint.  On December 2, 2005, the Commissioner filed a brief in

28    opposition to the relief requested in the complaint.

## SUMMARY OF ADMINISTRATIVE RECORD

### 1.   Proceedings

On May 21, 2002, plaintiff filed an application for benefits. (TR 49). A hearing was scheduled for March 14, 2003, however, plaintiff requested withdrawal of the hearing completely and a withdrawal dismissal was issued on March 19, 2003. (TR 48, 49, 159-60)

On December 29, 2003, plaintiff filed a subsequent application for disability insurance benefits and an application for Supplemental Security Income Benefits ("SSI"), alleging disability since November 17, 2001 due to lower back pain, torn meniscus-right knee and joint pain. (TR 172, 190, 354).[1]  The applications were denied. (TR 163).

On March 18, 2004, plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (TR 167). On November 18, 2004, plaintiff, represented by an attorney, appeared and testified before an ALJ. (TR 359-379). Plaintiff's husband also testified. (TR 379-382). The ALJ also considered vocational expert ("VE") testimony. (TR 382-83). On January 21, 2005, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, because she could perform a limited range of light work, including her past relevant work as a retail sales clerk, and thus was not eligible for benefits. (TR 19-25). On February 7, 2005, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision. (TR 13). On July 1, 2005, the request was denied. (TR 8). Accordingly, the ALJ's decision stands as the final decision of the Commissioner. Plaintiff subsequently sought

---

[1]     "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

judicial review in this court.

    **2.**   **Summary Of The Evidence**

    The ALJ's decision (TR 19-25), except as otherwise noted, materially summarizes the evidence in the case.

PLAINTIFF'S CONTENTIONS

    Plaintiff contends as follows:

1.   The ALJ failed to properly assess plaintiff's residual functional capacity;

2.   The ALJ improperly discounted plaintiff's hearing testimony;

3.   The ALJ failed to properly consider lay witness testimony; and,

4.   The ALJ improperly found that plaintiff could return to her past relevant work.

STANDARD OF REVIEW

    Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards. Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

    When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner. Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995). The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g).

3

**DISCUSSION**

**1.   The Sequential Evaluation**

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled.  First, it is determined whether the person is engaged in "substantial gainful activity."  If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments.  If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work.  If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.  The person is entitled to benefits only if the

4

1 person is unable to perform other work.  20 C.F.R. §§404.1520, 416.920;

2 Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

3     **2.  Issues**

4         **A.  Residual Functional Capacity**

5     Plaintiff contends that the ALJ failed to properly assess her

6 residual functional capacity ("RFC").

7     The RFC is the most an individual can still do after considering

8 the effects of physical and/or mental limitations that affect the

9 ability to perform work-related tasks. 20 C.F.R. §§ 404.1545, 416.945.

10 In assessing a plaintiff's RFC, the Commissioner considers all relevant

11 evidence, including medical evidence and plaintiff's testimony.  Id.  In

12 order to determine whether the plaintiff has the RFC to perform

13 plaintiff's past work, the Commissioner must ascertain the demands of

14 plaintiff's former work, and then compare the demands with plaintiff's

15 capacity.  Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986).

16     Here, the ALJ determined that plaintiff can perform "light work

17 with occasional climbing (ramps, stairs), stooping, kneeling, crouching

18 with no repetitive movements of the right lower extremity (foot pedals)

19 and no climbing (ladders/ropes/scaffolds) or balancing." (TR 22).  This

20 finding is supported by substantial evidence in the record.

21     The consultative board-certified orthopedic surgeon who examined

22 plaintiff, Dr. Timothy Ross, found that she was capable of lifting

23 and/or carrying 50 pounds occasionally and 25 pounds frequently,

24 standing six hours a day, and sitting without restrictions.  (TR 248).

25 He also found that plaintiff could not perform repetitive tasks on the

26 right leg.  Id.  The non-examining physician who reviewed plaintiff's

27 medical records made similar findings and further found that plaintiff

28                                      5

could occasionally climb ramps and stairs, and occasionally kneel, stoop, crouch, and crawl, and could never engage in tasks involving balancing or climbing ladders, ropes or scaffolds. (TR 249-56). Plaintiff's treating physician, Dr. Aguiluz, found that plaintiff can carry up to 24 pounds occasionally, had only mild gross motor limitations, and that plaintiff could not use her right leg for repetitive movements. (TR 280). These evaluations were all performed prior to plaintiff's arthroscopic surgery in October 2004. Dr. Aguiluz opined that plaintiff's prognosis was "good with surgery and physical therapy." (TR 279). These opinions are consistent with the ALJ's findings concerning plaintiff's RFC.

Plaintiff contends that the ALJ's findings as to plaintiff's RFC do not adequately consider plaintiff's testimony as to her symptoms and limitations. As discussed below, the ALJ found plaintiff's testimony not credible for legally sufficient reasons. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004)(ALJ properly did not include plaintiff's testimony in determination of plaintiff's residual functional capacity where the ALJ found plaintiff not credible based on substantial evidence).

Plaintiff also contends that the ALJ's finding as to plaintiff's RFC is contrary to Dr. Aguiluz's assessment that plaintiff cannot perform sustained employment and her prescribed treatment of a knee brace and periodic icing and elevation of plaintiff's knee. However, Dr. Aguiluz simply checked the box in her evaluation form indicating that *on the date the form was filled out* plaintiff was unable "to engage in any sustained employment." (TR 279). This opinion is conclusory and not supported by Dr. Aguiluz's other findings concerning plaintiff's

6

limitations and her prognosis after surgery and physical therapy. Accordingly, the ALJ need not accept this opinion. Batson v. Commissioner, 359 F.3d at 1195("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole," or "by objective medical findings")(citation omitted). Further, and most importantly, this opinion concerns only a snapshot in time. Dr. Aguiluz does not state that plaintiff's impairment had rendered plaintiff unable to work for the past year or that she would be unable to work after her October 6, 2004 surgery. On the contrary, Dr. Aguiluz stated that plaintiff's prognosis with surgery is good. (TR 279). In order to qualify for disability benefits, a plaintiff must prove that she is unable to engage in any substantial gainful activity due to an impairment which has lasted or is expected to last for a continuous period of not less than twelve months. Roberts v. Shalala, 66 F 3d 179, 182, cert. denied, 517 U.S. 1122 (1996); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909. Dr. Aguiluz's statement concerning plaintiff's ability to work on May 10, 2004 does not support plaintiff's claim of a disabling impairment and does not detract from the ALJ's findings.

Finally, the fact that plaintiff's doctor prescribed a knee brace prior to plaintiff's surgery and may have suggested icing and elevating her knee when needed does not indicate that plaintiff is unable to perform light work with normal breaks.[2] In fact, plaintiff was wearing

---

[2]The VE testified that plaintiff could not work if she could not stand longer than 20-30 minutes and had to elevate her while lying down several times a day. (TR 333). However, these assumptions are based solely on plaintiff's testimony as to her limitations, which the ALJ found not credible. See Thomas v. Barnhart, 278 F 3d 947, 959-60 (9th Cir. 2002)(ALJ need not include limitations alleged by plaintiff in hypothetical to VE where ALJ finds

1  a knee brace when she was examined by Dr. Ross, the consultative
2  examiner, and he found that she was nonetheless physically capable of
3  meeting the standing and sitting requirements of a normal workday.  (TR
4  248).

5      In sum, the ALJ's findings concerning plaintiff's residual
6  functional capacity were supported by substantial evidence and free from
7  material legal error.

8              **B.   Plaintiff's Testimony**

9      Plaintiff also contends that the ALJ improperly discredited her
10 testimony concerning her symptoms and limitations.

11     The Commissioner's assessment of plaintiff's credibility should be
12 given great weight.  <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir.
13 1985).  Although the ALJ's interpretation of plaintiff's testimony may
14 not be the only reasonable one, if it is supported by substantial
15 evidence "it is not [the court's] role to second-guess it."  <u>Rollins v.</u>
16 <u>Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001) (citing <u>Fair v. Bowen</u>, 885
17 F.2d 597, 604 (9th Cir. 1989)).

18     "Generally, a [plaintiff's] credibility becomes important at the
19 stage where the ALJ is assessing [RFC], because the [plaintiff's]
20 subjective statements may tell of greater limitations than can medical
21 evidence alone."  <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1147 (9th Cir.
22 2001).  For this reason, the ALJ may not reject plaintiff's testimony
23 regarding plaintiff's limitations merely because they are not supported
24 by objective evidence.  <u>Id.</u> at 1147-48 (citing <u>Fair v. Bowen</u>, 885 F.2d
25 at 602).  However, "the medical evidence is still a relevant factor in
26 determining the severity of [plaintiff's] pain and its disabling

27 ────────────

28 plaintiff's testimony not credible as to those limitations).

1  effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)
2  (citing 20 C.F.R. § 404.1529(c)(2)).

3      In assessing plaintiff's credibility, the ALJ may use "ordinary
4  techniques of credibility evaluation," such as considering plaintiff's
5  reputation for truthfulness and any inconsistent statements in
6  plaintiff's testimony. Tonapetyan v. Halter, 242 F.3d at 1148. The ALJ
7  must give specific, convincing reasons for rejecting plaintiff's
8  subjective statements. Id. (citing Fair v. Bowen, 885 F.2d at 602).
9  See also Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

10     Here, plaintiff essentially testified that she does little all day
11  and that her husband does everything for her during the day, although he
12  works all night. (TR 365-69; 378-79; 380). However, Plaintiff
13  provides in home care for her mother and gets paid $7.50 per hour/$300
14  every two weeks by the state for providing that care. (TR 191, 202,
15  366). Plaintiff stated on her work history form provided to the agency
16  that she is a "lead worker" in this job and described her daily
17  activities in this job as "prepare meals, clean, dust, vacuum, drive to
18  doctor appointment, care for client." (TR 202). Plaintiff also cares
19  for her granddaughter. (TR 379). Further, in her activities reports
20  submitted to the agency, plaintiff stated that she not only cares for
21  her mother, she also cares for herself, does light housework, goes to
22  the grocery store and does some driving. (TR 227-229).

23     In addition, plaintiff had her arthroscopic surgery on October 6,
24  2005. Notes from her surgeon's records indicate that plaintiff had a
25  follow-up visit on October 20, 2004. Those notes state that plaintiff
26  is "doing well post [surgery]" and is "using crutches," but is capable

27
28
                                    9

1   of "walking – no limp – with no crutches."[3] (TR 312). Yet, plaintiff

2   used a cane at the hearing and testified that her condition was not

3   getting any better after the surgery. (TR 371, 375).

4       After considering this testimony and the record as a whole, the ALJ

5   found plaintiff's testimony as to her symptoms and limitations not

6   credible. The ALJ found that the objective evidence does not support

7   plaintiff's claims of disabling limitations to the degree alleged. (TR

8   23). The ALJ observed that plaintiff's claims of radiating back pain

9   are not supported by reports of associated neurological deficits and

10   there are no objective clinical findings to support plaintiff's claims

11   of radicular back pain.[4] (TR 23). Dr. Ross, the consultative

12   orthopedist who examined plaintiff in 2004 found that plaintiff had only

13   slight anterolisthesis at the L3-4 level, with no other degenerative

14   findings and that plaintiff's claims of tenderness in the lower and mid

15   back region were "overstated." (TR 246-47). Dr. Ross did not find that

16   this impairment would cause limitations that would keep plaintiff from

17   working. (TR 248).

18       In addition, the ALJ found that plaintiff's claim that she can only

19   sit for a half hour at a time, (TR 226), is contradicted by Dr. Ross's

20   finding – made after a thorough examination and assessment of plaintiff

21   - that plaintiff could sit for unlimited periods during an eight hour

22

23       [3]In addition, plaintiff's surgeon prescribed exercises for her
hamstrings and quadriceps (TR 345), but there is no indication that plaintiff

24   was doing any exercise at the time of her hearing – instead, she testified
that she primarily watches television all day. (TR 368-369).

25

26       [4]Radiculopathy is a disorder of the spinal nerve roots. See Dorland's
Online Illustrated Medical Dictionary at www.mercksource.com. In his 2004

27   examination of plaintiff, Dr. Ross found that she had only mild
anterolisthesis at the L3-L4 level and he found no evidence of a
radiculopathic process. (TR 247-48).

28

1  work day.  (TR 248).   The ALJ could properly consider this medical

2  evidence in determining the credibility of plaintiff's allegations.

3  Rollins v. Massanari, 261 F.3d at 857.

4      The ALJ also noted that Dr. Ross found evidence that plaintiff was

5  exaggerating her symptoms in a manner that was not supported by

6  objective findings.  (TR 23, 248).   Specifically, Dr. Ross found that

7  "Waddell's signs were positive," indicating a non-physical component to

8  some of plaintiff's alleged pain and symptom magnification.[5]  (TR 23,

9  248).   Dr. Ross also found that plaintiff made only a "limited effort"

10 in her range of motion testing.  (TR 246).   Evidence of exaggeration of

11 symptoms or attempts to manipulate test results are factors the ALJ can

12 consider in determining plaintiff's credibility.[6]   See Thomas v.

13 Barnhart, 278 F.3d at 959(ALJ appropriately considered plaintiff's

14 efforts to impede accurate testing of her condition by failing to give

15 consistent effort during her physical capacity evaluation); Tonapetyan

16 v. Halter, 242 F.3d at 1148(plaintiff's tendency to exaggerate as

17 evidenced by her conduct during examination by consultative physician

18 was one of the "specific and convincing" reasons the ALJ gave in

19 properly discrediting plaintiff's testimony).

20  _____

21      [5]Waddell signs are a group of eight physical signs in patients with low
    back pain, which were first described in Waddell, G., Main, C.J., Morris,
22  E.W., et al. (1984)"Chronic low back pain, psychological distress, and illness
    behavoir" Spine 9, 209-13.  They are considered to be indicators of a non-
23  organic or psychological component to pain.   See www.wikipedia.org; see also
    Dan J. Tennenhouse, Attorneys' Medical Deskbook, 3d § 11:2(2002).

24
        [6]Dr. Ross is not the only doctor who found that plaintiff's complaints
25  were not supported by objective evidence.  The record from plaintiff's 2002
    application contains a 1/21/02 letter from Dr. Andrew Roth, an orthopedist, to
26  AIG Insurance detailing the results of his examination of plaintiff apparently
    in connection with her worker's compensation claim.  (TR 104).  Dr. Roth found
27  that plaintiff's complaints were not supported by objective findings and found
    plaintiff not credible.  (TR 105).

28                                    11

1    Finally, the ALJ found that plaintiff has made contradictory

2    statements concerning her limitations.  As an example, the ALJ noted

3    that plaintiff claimed at one point that she can walk only one-half

4    block and at another that she could walk one quarter mile.  (TR 23, 220,

5    226).  The ALJ may discredit plaintiff's allegations based on such

6    inconsistencies.  Tonapetyan v. Halter, 242 F.3d at 1148.

7    In sum, the ALJ provided legally sufficient reasons for

8    discrediting plaintiff's testimony and the ALJ's decision is supported

9    by substantial evidence.[7]

10       **C.   Lay Testimony**

11   Plaintiff asserts that the ALJ improperly ignored the testimony of

12   plaintiff's husband.

13   "[D]escriptions by friends and family members in a position to

14   observe [plaintiff's] symptoms and daily activities have routinely been

15   treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232

16   (9th Cir. 1987); see also Crane v. Shalala, 76 F.3d 251, 254 (1996).  The

17   ALJ may not discount witness reports solely because they were procured

18   by plaintiff.  Crane v. Shalala, 76 F.3d at 254 (citing Ratto v.

19   Secretary, Dept. of Health & Human Servs., 839 F. Supp. 1415, 1426 (D.

20   Or. 1993)).  Rather, if the ALJ wishes to discount the testimony of a

21   lay witness, she must give reasons that are germane to that witness.

22

23       [7] In addition, the ALJ noted that plaintiff's post-surgery condition
     will likely not meet the durational requirement since she had surgery in
24   October 2004 and was expected to improve after thirty days of physical
     therapy.  See Roberts v. Shalala, 66 F.3d at 182("An individual is disabled
25   within the meaning of the Social Security Act when she "is unable to engage in
     any substantial gainful activity by reason of any medically determinable
26   physical or mental impairment which ... *can be expected to last for a*
     *continuous period of not less than twelve months*."); see also 42 U.S.C. §§
27   423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1509.  It is plaintiff's burden
     to meet this requirement.  Roberts, 66 F.3d at 182.

28

Crane v. Shalala, 76 F.3d at 254 (citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

Plaintiff's husband testified briefly at the hearing that prior to the surgery, plaintiff was in pain, but Advil would help her pain. (TR 380). He further testified that he washes, cooks and cares for plaintiff's mother, and that plaintiff does little during the day. (TR 380-382). He testified that he helps plaintiff all day and yet he works an all night twelve-hour shift from "12:00 to 12:00." (TR 380).

The ALJ considered the testimony of plaintiff's husband, which essentially corroborates plaintiff's testimony as to her limitations. (TR 21). The ALJ expressly found plaintiff's testimony as to her limitations not credible because, among other things, it was contradicted by the medical evidence, namely the findings of the consultative and state agency physicians. The corroborative testimony of plaintiff's husband is similarly contradicted by that medical evidence. See Bayliss v. Barnhart, 427 F 3d 1211, 1218 (9th Cir. 2005)(inconsistency with the medical evidence is a proper reason for rejecting the testimony of family members). Moreover, the general testimony of plaintiff's husband that he helps her around the house and that she does little to contribute does not demonstrate that she is unable to work.

The ALJ's consideration of the testimony of plaintiff's husband is supported by substantial evidence and free from material legal error.

### D.   Past Relevant Work

Finally, plaintiff claims that the ALJ erred in finding that plaintiff is capable of performing her past relevant work as a sales clerk.

1    At step four, plaintiff bears the burden of showing that she does
2    not have the RFC to engage in past relevant work.  See Lewis v. Apfel,
3    236 F.3d 503, 516 (9th Cir. 2001) (citing 20 C.F.R. § 416.920(e)).  More
4    specifically, plaintiff must prove "an inability to return to
5    [plaintiff's] former type of work and not just [plaintiff's] former
6    job."  Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986); see also
7    20 C.F.R. §§ 404.1520(e); 416.920(e).   In determining whether a
8    plaintiff has the capacity to perform his or her former work, the
9    Commissioner may rely on the general job categories of the Dictionary of
10   Occupational Titles ("DOT") as presumptively applicable to plaintiff's
11   past relevant work.  Villa v. Heckler, 797 F.2d at 798; 20 C.F.R. §§
12   404.1566(d); 416.966(d).  A plaintiff can rebut this presumption by
13   showing that the duties in his or her line of work are not those
14   envisaged by the drafters of the applicable DOT category.  Villa v.
15   Heckler, 797 F.2d at 798.

16   A job qualifies as past relevant work if: (1) it was performed in
17   the last fifteen years; (2) involved substantial gainful activity; and,
18   (3) was performed long enough for the individual to learn the
19   techniques, acquire information, and develop the facility needed for
20   average performance in the job situation.  See 20 C.F.R. § 416.960(b)(1)
21   ("[p]ast relevant work is work that you have done within the past 15
22   years, that was substantial gainful activity, and that lasted long
23   enough for you to learn to do it").  Substantial gainful activity is
24   work done for pay or profit that involves significant mental or physical
25   activities.  See 20 C.F.R. §§ 416.971-416.975.

26   The ALJ found that plaintiff's past relevant work was as a retail
27   sales clerk, which plaintiff does not dispute.  At the hearing a
28

14

vocational expert testified that plaintiff's past relevant work falls under the DOT job listing 290.477-014, and is light exertional-level work with an specific vocational preparation requirement ("SVP") of three.[8] (TR 23, 333). The ALJ gave the VE a hypothetical based on plaintiff's RFC and the VE opined that a person with plaintiff's RFC could perform plaintiff's past relevant work. (TR 333-34). As discussed above, the ALJ's determination of plaintiff's RFC is free from material legal error and supported by substantial evidence.

Plaintiff complains that the ALJ failed to fully and fairly specify duties of her past job as a retail sales clerk and assess plaintiff's ability to perform the specific tasks required. Plaintiff does not identify any specific job duties that the ALJ failed to consider. Moreover, the ALJ provided the VE with all plaintiff's limitations that he found credible and that were supported by substantial evidence.

Further, based on plaintiff's RFC, the VE found that plaintiff could perform the job of retail sales clerk, DOT No. 290.477-014. Plaintiff's description of her past work matches the job requirements of DOT No. 290.477-014. Compare TR 191 (describing past jobs as involving "customer service, cashier, merchandising, stocking, displays") to DOT 290.477-014 (describing retail sales clerk position as involving, among other tasks, setting up displays, customer service, cashier work and stocking merchandise).

Accordingly, the ALJ's finding that plaintiff can return to her past relevant work is free from material legal error and supported by

_____

[8]According to Appendix C of the DOT, an SVP of 3 requires specific vocational preparation time of over one month and up to and including three months.

1 | substantial evidence.

2 | **CONCLUSION**

3 | If the evidence can reasonably support either affirming or
4 | reversing the Commissioner's conclusion, the court may not substitute
5 | its judgment for that of the Commissioner.   <u>Flaten v. Secretary of</u>
6 | <u>Health and Human Services</u>, 44 F.3d at 1457.

7 | After careful consideration of the record as a whole, the
8 | magistrate judge concludes that the Commissioner's decision is supported
9 | by substantial evidence and is free from material legal error.

10 | DATED: December 14, 2005

11 | _____/ S /_____
 | CAROLYN TURCHIN
12 | UNITED STATES MAGISTRATE JUDGE